# UNITED STATES DISTRICT COURT
# DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Christopher A. Santiago, #304243, | ) | Case No.: 4:16-cv-3512 |
| Petitioner, | ) | |
| | ) | **ORDER AND OPINION** |
| v. | ) | |
| Warden Tim Riley, Kirkland Correctional Institution, | ) | |
| Respondent. | ) | |

This matter is before the Court on the Report and Recommendation ("R. & R.") of the Magistrate Judge recommending that this Court grant Respondent's motion for summary judgment. (Dkt. Nos. 21, 15.) Petitioner has filed objections to the R & R and the Respondent has filed a response. (Dkt. Nos. 22, 24.) For the reasons set forth below, the Court grants Respondent's motion for summary judgment.

## I. Factual Background

Petitioner was indicted by the Beaufort County Grand Jury in October 2002 for murder and possession of a firearm during commission of a violent crime. Petitioner was tried by a jury before the Honorable Diane Schafer Goodstein. Evidence offered at trial indicated that Petitioner and the victim, Joe Wisn, were involved in a running dispute over Petitioner's relationship with the victim's daughter. Prior to the fateful events of August 9, 2002, the victim had ordered Petitioner out of his vacation home in Hilton Head, where he had been residing with the victim's daughter. Petitioner was deeply upset about his expulsion from the victim's home and the resulting disruption of the relationship with the victim's daughter.

Petitioner received a telephone message from the victim's father to come by the vacation home to retrieve personal belongings he had left behind. Petitioner arrived at the victim's home

and testified that the victim ridiculed him and told him to "stay the f-away from my daughter." As the victim was placing Petitioner's belongings in the truck of Petitioner's car, the victim saw a shotgun, which was loaded. Petitioner testified that he believed the victim was about to grab the shotgun, and he grabbed the loaded weapon and pointed it at the victim. The victim told Petitioner "don't be f-ing stupid." Petitioner took a step backward. Petitioner testified that he thought the victim was about to reach for the weapon so he shot him four times, resulting in the victim's death. *State v. Santiago*, 634 S.E. 2d 23, 25-6 (S.C. App. 2006).

Petitioner fled the scene but later drove to a fire station, where he told a fireman he had shot a man who had "ruined his life." Law enforcement officers were summoned, Petitioner was Mirandized, and then gave a full confession. He was then arrested, tried and convicted of murder and possession of a firearm during the commission of a violent crime. *Id.* at 26. Petitioner's conviction was affirmed on direct appeal and a subsequent state post-conviction petition was denied. (Dkt. No. 1-4 at 285-297, 325, 326-27). Petitioner thereafter filed a petition for a writ of habeas corpus with this Court.

In the course of Petitioner's trial which resulted in his criminal convictions, Petitioner sought to admit the testimony of a forensic psychiatrist, Dr. Donna Schwartz-Watts, that he suffered from Asperger's Disorder. This diagnosis was reached, according to defense counsel, after Dr. Schwartz-Watts had examined Petitioner and reviewed his medical records. Defense counsel summarized Dr. Schwartz-Watts' testimony for the trial court, explaining that Asperger's Disorder is a subset of autism which interferes with a person's perceptions, particularly in stressful and anger-filled situations. (Dkt. No. 1-3 at 21-22, 143-145). Defense counsel sought to admit this evidence to support a defense of self-defense.

The trial judge stated that she recognized that the proposed defense testimony was "offered for the purpose of establishing that by virtue of Mr. Santiago's emotional, mental illness or particular mental illness . . . it has an effect on his perception and emotional state" and that his perception of a threat was not "normal." (*Id.* at 30). Defense counsel summarized Dr. Schwartz-Watts' testimony, rather than put the physician on the stand to make a formal record of her testimony. The trial judge refused to allow Dr. Schwartz-Watts to testify, finding that such testimony was essentially offered in support of a diminished capacity defense, which is not recognized in South Carolina. (*Id.* at 30-31). She further concluded that the facts before the Court did not support a charge for self-defense, specifically finding Petitioner could not meet the requirement that any perceived danger to support a claim of self-defense must meet a reasonable person standard under South Carolina law. (*Id.* at 150-153). The trial judge's ruling regarding the legal standard for charging self-defense under South Carolina law was affirmed by the Court of Appeals. *State v. Santiago*, 634 S.E. 2d at 26-29.

Defendant's state court conviction became final on November 21, 2007, 90 days after denial of his petition for certiorari with the United States Supreme Court on August 23, 2007. Petitioner filed his state PCR petition on February 28, 2008, tolling the statute of limitations after 99 days of untolled time had expired. Petitioner's petition for a writ of certiorari from his PCR appeal was denied on December 30, 2015, with the remittitur being filed with the Beaufort County Clerk of Court on January 25, 2016. This petition for a writ of habeas corpus was filed on October 28, 2016, which was 277 days after the PCR petition became final. Thus, the total number of untolled days was 376 days, rendering Petitioner's petition untimely under the one year statute of limitations under the ADEPA, 28 U.S.C. § 2244(d)(1).

Petitioner raised in his habeas petition the following two grounds for relief based on the alleged ineffective assistance of his trial counsel:

1. Trial counsel failed to offer or proffer expert psychiatric testimony that Mr. Santiago's Asperger's Disorder caused him to perceive the victim's words and acts as threatening. The absence of this evidence denied Mr. Santiago critical facts that supported a self-defense charge by the trial court and would have given the jury a choice beyond mere guilt or innocence. Even if the trial court refused to give such a charge, the court of appeals would have been able to review that decision with the benefit of Dr. Schwartz-Watts' testimony. Thus, the absence of this evidence denied Mr. Santiago a defense and precluded him from presenting his case to a jury of his peers.

2. Trial counsel failed to call Dr. Schwartz-Watts to explain that Mr. Santiago's fragile mental state was responsible for the bizarre, inculpatory pretrial statements he gave to police. Had counsel offered this evidence, these statements would have been excluded altogether or, at least, explained to a jury that had no opportunity to understand the serious developmental disorder that shapes Chris Santiago and his perceptions or the mental health crisis he was still undergoing when he was interrogated. (Dkt. No. 1 at 7.)

## II. Legal Standards

### a. Magistrate Judge's Report and Recommendation

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight, and the responsibility for making a final determination remains with this Court. *See Mathews v. Weber*, 423 U.S. 261, 270-71 (1976). The Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). As indicated below, the Court accepts the recommendation of the

Magistrate Judge that the Respondent's motion for summary judgment be granted on the basis of the untimeliness of the petition for a writ of habeas corpus.

### b. Summary Judgment

To prevail on a motion for summary judgment, the movant must demonstrate that there is no genuine issue of any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The party seeking summary judgment has the burden of identifying the portions of the "pleadings, depositions, answers to interrogatories, any admissions on file, together with the affidavits, if any, which show there is no genuine issue as to any material fact that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The Court will construe all inferences and ambiguities against the movant and in favor of the non-moving party. *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). The existence of a mere scintilla of evidence in support of the non-moving party's position is insufficient to withstand a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). However, an issue of material fact is genuine if the evidence is such that a reasonable jury could return a verdict in favor of the non-movant. *Id.* at 257.

### c. AEDPA's One-Year Statute of Limitations

The Antiterrorism and Effective Death Penalty Act ("AEDPA") governs habeas petitions and provides that a person in custody pursuant to the judgment of a State court must submit an application for a writ of habeas corpus within one year of the latest of several dates, including the date the "judgment became final by the conclusion of direct review or the expiration of the time for seeking such review" or "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2244(d)(1). Periods during which state post-conviction relief ("PCR") proceedings are pending

in any state court do not count towards the one-year period. 28 U.S.C. § 2244(d)(2). The one-year period is also subject to equitable tolling if Petitioner can show that (1) he has pursued his rights diligently; and (2) some extraordinary circumstance prevented his timely filing. *Pace v. DiGuglielmo*, 544 U.S. 408, 418, (2005).

## III. Discussion

The parties do not dispute that Petitioner filed this habeas petition over one year after the date his conviction became final. (Dkt. No. 21 at 11.) Petitioner argues that the Court should consider his petition to be timely filed because (1) he filed the petition within one year of discovering new evidence that forms the factual predicate of his claims and (2) the actual innocence rule announced in *McQuiggin v. Perkins*, 133 S. Ct. 1924 (2013) applies in this case.

### A. The Factual Predicate of Petitioner's Habeas Claims

Petitioner claims that the one-year window for his filing this habeas petition opened on July 27, 2009, the date his trial counsel was deposed during PCR proceedings and Petitioner claims he first learned the factual predicate of his claim. The Court must first determine the factual predicate of Petitioner's habeas claims. Petitioner's habeas claims are based on the argument that his trial counsel was ineffective for failing to proffer or offer to proffer the testimony of Dr. Schwartz-Watts about the effects of Asperger's Disorder on Petitioner's state of mind and actions which he says "denied him the opportunity to present a legal defense of self-defense and an opportunity to challenge pretrial statements that would have resulted in their exclusion or, at least, explain their unreliability to the jury." (Dkt. No. 1 at 1.)

The crux of Dr. Schwartz-Watts' testimony about Petitioner's Asperger's Disorder, its potential relevance to Petitioner's arguments about self-defense and the voluntariness of his pre-trial statements, and trial counsel's failure to formally proffer Dr. Schwartz-Watt' testimony

about these issues are clear from the trial transcript. (Dkt. No. 1-3 at 21-40, 142-157.) Petitioner's trial counsel explained to the trial judge on the record that he intended to use Dr. Schwartz-Watts' testimony that a person with Asperger's would perceive threats differently than the average person to support his argument for a jury instruction on self-defense. (*Id.* at 21-22.) The trial court judge was also aware that Petitioner sought to introduce Dr. Schwartz-Watts' testimony to explain why, for example, Petitioner may have made "untrue" statements to the police. (*Id.* at 142.) Although the trial judge was careful to ensure that Mr. Santiago's counsel had the opportunity to proffer Dr. Schwartz-Watts' testimony for the record, when given this opportunity, trial counsel summarized the evidence for the record rather than place Dr. Schwartz-Watts on the stand to offer her sworn testimony. (Dkt. No. 1-3 at 142-145).[1]

After a full exchange between defense counsel and the trial court regarding the substance of the proposed expert testimony, the use of that testimony, and the relevant South Carolina law regarding self-defense and diminished capacity, the trial court excluded the testimony of Dr. Schwartz-Watts. In reaching that ruling, the trial court stated that under the facts presented Petitioner could not meet the objective standards for the assertion of self-defense and defendant was essentially asserting a diminished capacity defense that was not allowed under South Carolina law. (*Id.* at 23, 26, 30-32, 149-53).

Petitioner claims that he only discovered the factual predicate of his habeas claims on July 27, 2009 during his PCR proceedings when he learned of both (1) "Dr. Schwartz-Watts'

---

[1] A comparison of the summary of Dr. Schwartz-Watts' proposed testimony provided to the trial court by trial counsel with the actual testimony of Dr. Schwartz-Watts at the PCR hearing reveals that the trial judge had from the trial counsel's summary the essence of the proposed testimony. The discussion between trial counsel and the trial judge demonstrated that she fully understood the nature of the proposed expert testimony and the substantive law of self-defense under South Carolina law. The subsequent testimony offered by Dr. Schwartz-Watts at the PCR hearing added nothing material to the information provided to the trial judge by trial counsel. (Dkt. No. 1-3 at 21-22, 26, 30-32, 143-145, 148-153; Dkt. No. 1-4 at 76-105).

opinions concerning Mr. Santiago's state of mind" and (2) "off-the-record conferences trial counsel had with the trial court attempting to explain the import of this expert testimony." (Dkt. No. 19 at 5-8.) Mr. Santiago says that only then did he obtain facts that allowed him to "appreciate the impact of trial counsel's failure to make a proffer." (*Id.* at 8.) Petitioner has not specifically identified which fact he believes alerted him to the impact of his trial counsel's failure. A review of the trial record reveals that all material information necessary for Petitioner to assert his claim of alleged ineffective assistance of counsel was disclosed to Petitioner in the course of the criminal trial. Even if there were additional facts Petitioner discovered during his PCR proceedings that supported his ineffective assistance of counsel claims, they are not the factual predicate of his habeas claims. Instead, the specific details of Dr. Schwartz-Watt's opinion and his trial counsel's recollection of the in-chambers conference during trial are, at most, additional evidence that is potentially relevant to his habeas claims.

Courts in this district have held that "§ 2244(d)(1)(D) does not convey a statutory right to an extended delay while a petitioner gathers every possible scrap of evidence that might support his claim." *Flowers v. Harkleroad*, No. 5:12-CV-49-RJC, 2012 WL 5879822, at *4 (W.D.N.C. Nov. 20, 2012); *McKinney v. Ray*, No. CIVA 3:07CV266, 2008 WL 652111, at *2 (E.D. Va. Mar. 11, 2008); *Hill v. Johnson*, No. 3:09CV659, 2010 WL 5476755, at *3 (E.D. Va. Dec. 30, 2010). Petitioner has failed to show that he was unable, without the benefit of the facts he learned at the PCR hearing, to set forth the predicate facts that support his habeas claims. *See Canady v. Kiser*, No. 3:15CV263, 2015 WL 7455543, at *6 (E.D. Va. Nov. 23, 2015). Although Petitioner argues that the facts he discovered during PCR proceedings "alerted him to many of the central issues here" and allowed him to "fully appreciate the consequences of trial counsel's failure to make a proffer" (Dkt. No. 22 at 4), "the [AEDPA] limitation period begins to run when

the petitioner knows, or through due diligence could have discovered, the factual predicate for a potential claim, not when he recognizes their legal significance." *O'Neill v. Dir., Virginia Dep't of Corr.*, No. 3:10CV157, 2011 WL 3489624, at *5 (E.D. Va. Aug. 9, 2011). Finally, it is particularly telling that Petitioner does not rely on any facts he claims to have learned only during PCR proceedings to advance the merits of this habeas case. For these reasons, the Court finds that Plaintiff did not discover the factual predicate of his habeas claim during his PCR action so is not entitled to a later start date for the one-year AEDPA statute of limitations.

### B.     Actual Innocence - *McQuiggin*

Petitioner also argues that his habeas claims are not time-barred by AEDPA's one year statute of limitations because he is actually innocent under *McQuiggin*. Specifically, Petitioner asserts that he was entitled to a self-defense charge based on evidence about his Asperger's Disorder that was not presented to the jury, and that a self-defense charge would have led to a not guilty verdict.

The Supreme Court has explained that the actual innocence gateway around AEDPA's statute of limitations is rare and exists only "in light of new evidence" so strong that no reasonable juror "would have voted to find him guilty beyond a reasonable doubt." *McQuiggin*, 133 S. Ct. at 1928 (quoting *Schlup v. Delo*, 513 U.S. 298, 329, (1995)) (explaining that this demanding standard is seldom met). Procedural default can be excused only if a Petitioner "presents evidence of innocence so strong that a court cannot have confidence in the outcome of the trial." *Schlup*, 513 U.S. at 316. "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup*, 513 U.S. at 324. Further, "claims of actual innocence are rarely

successful," *Schlup*, 513 U.S. at 324, and "should not be granted casually." *Wilson v. Greene*, 155 F.3d 396, 404 (4th Cir. 1998). The district court must consider the record as a whole to make "a probabilistic determination about what reasonable, properly instructed jurors would do." *Schlup*, 513 U.S. at 329.

Petitioner has not met the demanding standard for the actual innocence exception under *McQuiggin*. Petitioner's actual innocence argument is based on the assumption that had Dr. Schwartz-Watts' testimony been proffered at trial, Petitioner would have been entitled to a jury instruction on self-defense. For the reasons below, the Court finds that Dr. Schwartz-Watts' testimony would not have entitled Petitioner to a jury instruction on self-defense, so Petitioner's actual innocence argument fails.

A defendant is entitled to a jury instruction on a recognized defense, like self-defense, when there is sufficient evidence in the record to support a jury finding in his favor. *See United States v. Ricks*, 573 F.3d 198, 200 (4th Cir. 2009) (citing *Mathews v. United States*, 485 U.S. 58, 63 (1988)). "The evidence presented at trial determines the law to be charged to the jury." *State v. Jackson*, 681 S.E.2d 17, 20 (S.C. Ct. App. 2009) (citing *State v. Brown*, 607 S.E.2d 93, 95 (S.C. Ct. App. 2004)). "If there is any evidence of record from which it can be reasonably inferred that an accused justifiably inflicted a wound in self-defense, then the accused is entitled to a charge on the law of self-defense." *Id.* (citing *State v. Wigington*, 649 S.E.2d 185, 188 (S.C. Ct. App. 2007)). However, a self-defense charge is only required if the evidence supports it. *State v. Slater*, 644 S.E.2d 50, 52 (S.C. 2007) In South Carolina, four elements must be present to establish self-defense:

> (1) the defendant must be without fault in bringing on the difficulty; (2) the defendant must have been in actual imminent danger of losing his life or sustaining serious bodily injury, or he must have actually believed he was in imminent danger of losing his life or sustaining serious bodily injury; (3) if his defense is based upon his belief of imminent danger, defendant must show that a reasonably prudent person of

ordinary firmness and courage would have entertained the belief that he was actually in imminent danger and that the circumstances were such as would warrant a person of ordinary prudence, firmness, and courage to strike the fatal blow in order to save himself from serious bodily harm or the loss of his life; and (4) the defendant had no other probable means of avoiding the danger.

*State v Jackson*, 681 S.E.2d at 20 (quoting *State v. Slater*, 644 S.E.2d at 52). "Any act of the accused in violation of law and reasonably calculated to produce the occasion amounts to bringing on the difficulty and bars his right to assert self-defense as a justification or excuse for a homicide." *State v. Bryant*, 520 S.E.2d 319, 322 (S.C. 1999). If an accused provoked or initiated an assault, he cannot claim self-defense unless he withdrew from the conflict and communicated his withdrawal by word or act to his adversary. *Id.*; *see also State v. Slater*, 644 S.E.2d at 52 (defendant not entitled to self-defense charge when he was not without fault in bringing on the difficulty and acted in violation of the law by carrying a weapon).

The trial judge determined that Petitioner was not entitled to a self-defense charge because, even assuming that Petitioner was not responsible for bringing about the difficulty and actually believed he was in imminent danger, there was not sufficient evidence in the record to support the third and fourth elements of self-defense which require a showing that a reasonable person would have perceived the circumstances required the exercise of self-defense and that there was no probable means of avoiding the danger. (Dkt. No. 1-3 at 149-155.) Petitioner disagrees, arguing that the Court of Appeals would not have rejected Mr. Santiago's self-defense argument had it had the benefit of Dr. Schwartz-Watts' testimony. Petitioner explains, "The question that should have been asked, and could not be considered on direct appeal, was whether a person with Asperger's Disorder of ordinary firmness and courage would have perceived a threat." (Dkt. No. 22 at 8.) The court disagrees.

There is both an objective and a subjective component to self-defense. A person alleging self-defense has to show that he personally held the subjective belief that he was in imminent

danger and separately, that a reasonably prudent person of ordinary firmness and courage would have entertained that belief as well. The law of self-defense in South Carolina specifically prevents individuals from relying on their own unreasonable assessments of the risk of imminent danger to avoid culpability for their actions. The trial court judge was under the impression that trial counsel was attempting to use Petitioner's Asperger's Disorder to support a charge of self-defense as a back door to a diminished capacity defense that is legally unavailable in South Carolina. (Dkt. No. 1-3 at 23-28, 30.) The trial court explained that an Asperger's diagnosis may be relevant to Petitioner's subjective assessment of a threat but that his mental health was not relevant to whether a reasonably prudent person of ordinary firmness would feel the threat of imminent harm. Petitioner's trial counsel argued then, as his habeas counsel does in the instant matter, that "the law is asking us to look at somebody with ordinary and reasonable actions or reactions when to begin with the defendant doesn't have ordinary actions or reactions." (Dkt. No. 1-3 at 28.) The trial judge reiterated, correctly, that this was essentially a diminished capacity defense. (*Id.*)

Petitioner relies heavily on the argument that evidence of an Asperger's diagnosis is similar to evidence of Battered Woman's Syndrome which he says has been found sufficient to support all four elements of a self-defense claim in South Carolina. (Dkt. No. 22 at 9.) The Court need not determine the state of the law in South Carolina with regard to whether evidence of Battered Woman's Syndrome is sufficient to obtain a jury charge on self-defense. There is no precedent in South Carolina for treating Asperger's Disorder the same as Battered Woman's Syndrome, and common sense advises against doing so.

In South Carolina, the "perceptions of a woman suffering from battered woman syndrome" have been found "compatible with and relevant to a self-defense claim." *Robinson v. State*, 417 S.E.2d 88 (S.C. 1992). The Battered Woman's Syndrome defense "is appropriate when the defendant has been the victim of continuing abuse over a period of time, and the defendant

believes she is in imminent danger from which escape is impossible even if the victim is not actively abusing her." *Tyler v. Kendell*, No. CA 8:09-377-CMC-BHH, 2009 WL 5216892, at *17 (D.S.C. Dec. 29, 2009). However, evidence of Battered Woman's Syndrome necessarily contains information relevant to the objective component of a self-defense claim: a history of physical or emotional abuse by someone the defendant resided with and with whom he or she had a close relationship. South Carolina courts have considered this information to be relevant to whether a reasonably prudent person of ordinary firmness and courage in the same situation (i.e. having sustained the same history of abuse) would have perceived an imminent threat. *See State v. Jones*, 786 S.E.2d 132, 142 (S.C. 2016) ("Jones's belief that she was in imminent danger of losing her life or sustaining great bodily injury was reasonable given Lee's actions toward her earlier in the evening, which included Lee punching Jones, dragging her by her hair, and forcing her back into the apartment.") An Asperger's diagnosis does not generally, and certainly not in this case, involve a history of abuse that might inform the objective component of a self-defense claim in South Carolina.

A review of Dr. Schwartz-Watts' proposed testimony, whether considering the summary provided to the trial court by defense counsel or the testimony from Dr. Schwartz-Watts at the PCR hearing, clearly fails to establish all four elements of self-defense under South Carolina law. Petitioner's actions, in bringing a loaded gun to the home of the father of his girlfriend with whom he was in conflict, pointing the gun at the unarmed victim, stepping away from the victim, and discharging four rounds into the victim's body on the claimed belief the victim might attempt to grab the gun from him, do not remotely meet the reasonable person requirement for a self-defense claim under South Carolina law. With the failure of the self-defense claim, Petitioner cannot assert a meritorious claim of innocence that would toll the statute of limitations

on the ADEPA cause of action. Further, for the reasons set forth above, Petitioner's actual innocence claim does not undermine this Court's confidence in the outcome of his trial.

**IV.      Conclusion**

For the reasons set forth above, Respondent's motion for summary judgment (Dkt. No. 15) is granted.

**V.      Certificate of Appealability**

The governing law provides that:

> (c)(2) A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right.
>
> (c)(3) The certificate of appealability . . . shall indicate which specific issue or issues satisfy the showing required by paragraph (2).

28 U.S.C. § 2253(c). A prisoner satisfies the standard by demonstrating that reasonable jurists would find this court's assessment of his constitutional claims debatable or wrong and that any dispositive procedural ruling by the district court is likewise debatable. *See Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *Rose v. Lee*, 252 F.3d 676, 683 (4th Cir. 2001). In this case, the legal standard for the issuance of a certificate of appealability has not been met. Therefore, a certificate of appealability is **DENIED**.

**AND IT IS SO ORDERED.**

Richard Mark Gergel
United States District Court Judge

September 24, 2017
Charleston, South Carolina